# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5708 | **DATE** | 9/24/2002 |
| **CASE TITLE** | Kolle vs. SGB Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of defendant WestAmerica Mortgage Company for judgment on the pleadings [26-1] and motion of defendant Capital Family Mortgage for judgment on the pleadings [29-1] are granted as to Counts V, VI, and VII, and Counts V, VI, and VII are dismissed. Status hearing is set for 10/15/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 6 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 5 2002 date docketed | 44 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | G.y. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/24/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

DOCKETED
SEP 2 5 2002

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL KOLLE and
REBECCA KOLLE,

Plaintiffs,

vs.

No. 01 C 5708

SGB CORPORATION, doing business as
WESTAMERICA MORTGAGE COMPANY,
and CAPITAL FAMILY MORTGAGE
COMPANY

Judge Joan H. Lefkow

Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Michael and Rebecca Kolle, filed this putative class action against defendants pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*. In Counts I and V, plaintiffs allege RESPA violations stemming from defendant SGM Corporation, doing business as WestAmerica Mortgage Company ("WestAmerica"), paying to defendant Capital Family Mortgage Company ("Capital") a yield spread premium in connection with mortgage loans. In Counts II and VI, plaintiffs advance claims under the Illinois Consumer Fraud Act, 815 ILCS 505/2, claiming that defendants engaged in unfair and deceptive trade practices. In Count III, plaintiffs allege an Illinois common law claim against Capital for breach of fiduciary duty. In Count IV, plaintiffs allege an Illinois common law claim against WestAmerica for inducing a breach of fiduciary duty. Finally, in Count VII, plaintiffs advance an Illinois common law claim for breach of contract. Before the court are the motions of defendants WestAmerica and Capital for partial judgment on the pleadings as to Counts V, VI, and VII. The court has jurisdiction over the claims pursuant to 12 U.S.C. § 2607, 28 U.S.C. §

1331, and 28 U.S.C. § 1367. For the reasons set forth below, the court grants both defendants' motions for partial judgment on the pleadings.

## JUDGMENT ON THE PLEADINGS STANDARDS

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *N. Indiana Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Judgment pursuant to Rule 12(c) is appropriate where "it appears beyond doubt that the plaintiff cannot prove any [set of] facts that would support his claim for relief." *Forseth* v. *Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (*quoting Thomason* v. *Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). In considering a 12(c) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Forseth*, 199 F.3d at 368. The court need not, however, accept as true conclusional legal allegations that the facts do not support. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999) (12(b)(6) motion); *Cagan* v. *Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1098 n.11 (N.D. Ill. 1991).

## FACTS

This action arises out of a mortgage loan transaction involving three parties: (1) the borrowers, Michael and Rebecca Kolle; (2) a mortgage broker, Capital; and (3) a lender, WestAmerica. In March 2001, the Kolles hired Capital to act as their broker to find a mortgage loan to finance the purchase of their residence in Round Lake Beach, Illinois. Plaintiffs obtained a $169,320 mortgage loan at 7.2983 % interest through Capital. The loan was insured by the Department of Veteran Affairs ("VA"). For arranging the transaction, Capital received an origination fee from plaintiffs equal to 1 % of the principal amount at the time of closing.

2

Capital, as broker, nominally made the loan, but it was funded by WestAmerica, which had agreed to purchase the loan prior to closing and had the loan assigned to it immediately after closing. Under the arrangement between WestAmerica and Capital, WestAmerica paid to Capital a fee, commonly referred to as a "yield spread premium," of $2,858.12, or 1.69 % of the principal loan amount. Thus, Capital ultimately received fees equal to 2.69 % of the principal's value at the loan's closing time.

## ANALYSIS

Plaintiffs allege in Count V of their complaint that because the yield spread premium, when aggregated with the 1 % origination fee plaintiffs paid to Capital, results in a payment in excess of the 1 % cap VA regulations impose, it is an unearned fee under section 8 of RESPA, 12 U.S.C. § 2607(b).[1] In Count VI, plaintiffs maintain that the failure to disclose that the 1 % VA cap was being evaded violated § 2 of the Illinois Consumer Fraud Act. In Count VII, plaintiffs maintain that WestAmerica and Capital breached their contract with the Kolles and potential class members by failing to disclose the alleged fees in excess of the 1 % cap. Because Counts V, VI, and VII are based on the yield spread premium being counted against the 1 % cap, if this court concludes that a yield spread premium does not count against the 1 % cap, then all three counts must be dismissed. The dispositive issue in these motions, then, is whether the origination fee includes the yield spread premium.

---

[1] Section 8(b) provides:
No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

3

Yield spread premiums are "payments made by a mortgage lender to a mortgage broker[2] as compensation for negotiating a loan with a borrower." *Vargas v. Universal Mortgage Corp.*, No. 01 C 0087, 2001 WL 558045, at *1 (N.D. Ill. May 21, 2001) (Zagel, J.) Mortgage brokers perform a number of different services in a potential loan transaction, such as filling out the loan application, ordering required reports and documents, and counseling the borrower participating in the loan. Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080, 10081 (March 1, 1999). In conjunction with these services, mortgage brokers can be compensated in a number of different ways. For example, either the borrower or the lender may compensate the broker directly. *Id.*

When the lender compensates the broker, these "yield spread premiums" may be based on the interest rate and points of each loan compared to the par rate[3] the lender offers to the mortgage broker for that particular loan. *Id. Vargas*, 2001 WL 558045, at *1 ("The higher the interest on the loan, the higher the yield spread premium for the broker."). To determine a loan's price, mortgage brokers rely on par rate quotes or rate sheets that lenders issue. Statement of Policy 1999-1 at 10081; *Bjustrom v. Trust One Mortgage*, 178 F. Supp. 2d. 1183, 1186 (W.D. Wash. 2001) ("This higher payment [of yield spread premiums] is not for any particular work that the mortgage broker has done, but rather depends on the daily 'rate sheets' published by . . .[the lender] that disclose to the mortgage broker its par rate and yield spread premiums.").

---

[2] A mortgage broker is an entity that brings together a borrower and a lender to obtain a loan. Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080, 10080 (March 1, 1999).

[3] The term "par rate" refers to the rate offered to the broker through the lender's price sheets at which the lender will fund 100% of the loan with no premiums or discounts to the broker. 1999 Statement of Policy, 64 Fed. Reg. at 10081 n.1.

4

When a lender agrees to purchase a loan from a broker, the broker receives the "then applicable pricing for the loan based on the difference between the rate reflected in the rate quote and the rate of the loan entered into by the borrower."[4] Statement of Policy 1999-1 at 10081.

One effect of these payments is that they may reduce the upfront costs consumers are required to pay. *Id.* Where a consumer does not compensate a broker through a direct fee, but instead the lender compensates the broker, the loan's interest rate is increased to compensate the broker or the fee is added to the principal. *Id.* Thus, ultimately the mortgagor pays the yield spread premium, either directly or indirectly.

With respect to a similar subsidized loan program under the Federal Housing Administration ("FHA"), the Department of Housing and Urban Development ("HUD") in its 2001 Statement of Policy describes yield spread premiums as not "per se illegal," with potential benefits, such as allowing homebuyers to "pay some or all of the up front settlement costs over the life of the mortgage through a higher interest rate." Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed.Reg. 53052, 53052-54 (Oct. 18, 2001). HUD recognized in its Statement of Policy that such premiums "allow the broker to recoup the up front costs incurred on the borrower's behalf in originating the loan." *Id.* at 53054. HUD found these yield spread premiums to be "useful means to pay some or all of a borrower's settlement costs" and "a legitimate tool to assist the borrower," the availability of which "fosters homeownership." *Id.* HUD did recognize,

---

[4] An example, listed in the HUD 1999 statement of policy, explains that "a loan of 8% and no points where the par rate is 7.50% will command a greater [yield spread] premium for the broker than a loan with a par rate of 7.75% and no points. Statement of Policy 1999-1 at 10081.

5

however, that yield spread premiums may be ways for brokers and lenders to "take advantage of the complexity of the settlement transaction" and that these payments may be used to "enhance the profitability of mortgage transactions without offering the borrower lower up front fees." *Id.*

Under 38 U.S.C. § 3703(c)(1), all VA-guaranteed loans are subject to regulations issued by the Secretary of the VA. Similar to HUD regulations governing FHA loans, VA regulations provide that "[n]o charge shall be made against, or paid by, the borrower incident to the making of a guaranteed or insured loan other than those expressly permitted under paragraph (d) or (e) of this section." 38 C.F.R. § 36.4312(a). Paragraph (d)(2) provides "[a] lender may charge and the veteran may pay a flat charge not exceeding 1 percent of the amount of the loan, provided that such flat charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule." 38 C.F.R. § 36.4312(d)(2).

Defendants cite one district court case holding that yield spread premiums do not apply to the 1 % cap imposed by VA regulations, *Geraci v. Homestreet Bank*, 203 F. Supp. 2d 1211, 1213-14 (W.D. Wash. 2002), and numerous cases reaching the same result with respect to the closely related 1 % cap imposed by HUD on FHA loans.[5] *Dominguez v. Alliance Mortgage Co.*, No. 01 C 16032, 2002 WL 1989528, at *2-4 (N.D. Ill. Aug. 23, 2002) (Moran, J.); *Krzalic v. American Home Mortgage Corp.*, No. 01 C 9107, 2002 WL 924618, at *2 (N.D. Ill. May 3, 2002) (Kennelly, J.); *Watson v. CBSK Financial Group, Inc.*, No. 01 C 4043, 2002 WL 598521,

---

[5]HUD, which oversees FHA loans, has implemented a regulation providing, in pertinent part, that "[t]he mortgagee may collect from the mortgagor for expenses incurred in originating and closing the loan, the charge not to exceed: (i) 20 dollars or one percent of the original principal amount of the mortgage." 24 C.F.R. § 203.27(a)(2)(i). Neither party attempts to draw a distinction between whether yield spread premiums would be included in the 1 % cap in the HUD regulations or the 1 % cap under the VA regulations. In fact, rather than attempting to distinguish cases finding that yield spread premiums do not count under the 1 % cap for the HUD regulations from this case interpreting VA regulations, plaintiffs argue that the HUD regulation cases are wrongly decided. (See Pl.'s Res. In Opp. to Def.'s Mot. For J. on the Plead., p. 6.)

6

at *4-*5 (N.D. Ill. April 18, 2002) (Nordberg, J.);; *Vargas v. Universal Mortgage Corp.*, No. 01 C 0087, 2001 WL 1545874, at *3-*4 (N.D. Ill. Nov. 29, 2001) (Zagel, J.); *Bjustrom*, 178 F. Supp. 2d at 11-93. Plaintiffs point to one case concluding that if the only reason for the above-par interest rate on a VA loan was to fund the payment to the broker, that would establish that the borrower, not the lender, paid the fee and, as such, the cap would be exceeded. *Andrews v. Temple Inland Mortgage Corp.*, No 00-1999, 2001 WL 1136160, at *4 (D. Minn. Sept. 24, 2001) (Frank, J.)

Thus, *Andrews* stands alone and its reasoning was explicitly rejected in *Geraci*, 203 F. Supp. 2d at 1214, which stated,

> [In *Andrews*, t]he court failed to confront the plain language of Section 36.4312 and the VA's interpretation of it. Although indirect payments could have been included as part of the one percent cap, there is no reference to such payments in the regulation and the VA's interpretation of the regulation supports a contrary conclusion."

The VA is expressly granted the authority under 38 U.S.C. § 3703(c)(1) to promulgate regulations governing the terms and conditions of VA-guaranteed loans. Once vested with this authority, the VA's interpretations of its regulations are entitled to great deference. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Bowman v. City of Indianapolis*, 133 F.3d 513, 517 (7th Cir. 1998); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *cf. Bjustrom*, 178 F. Supp. 2d at 1183 (Addressing FHA loans, "The statute governing mortgage insurance gives HUD considerable authority to manage the details of eligible mortgages . . . .").

In Chapter 8 of its Lender's Handbook, the VA expressly interprets 38 C.F.R. § 36.4312 under the heading "Fees and Charges the Veteran-Borrower Can Pay." (Def.'s Mot. For Part. J. on the Plead., Ex. C, § 8.02 at 8-3.) This section clarifies that "the lender may charge the veteran

7

a flat charge not to exceed 1 % of the loan amount." *Id.* at 8-6. In Section 8.03 of the Handbook, entitled "Fees and Charges the Veteran-Borrower Cannot Pay," the VA lists "examples of items that cannot be paid by the veteran, but can be paid out of the lender's flat charge *or by some party other than the veteran.*" *Id.*, § 8.03 at 8-8 (emphasis added). In the next section, the Handbook expressly states that "[t]he seller, lender, or any party may pay fees and charges, including discount points, on behalf of the borrower. VA regulations limit charges 'made against or paid by' the borrower. They do not limit the payment of fees and charges by other parties." *Id.*, § 8.04 at 8-10. As in *Geraci*, 203 F.3d at 1214-15, this court concludes that these interpretations are reasonable and consistent with the regulation's plain language and make clear that lender payments to third parties, which would include yield spread premiums, are not intended to be subject to the 1 % cap the VA regulations impose.

This court also finds persuasive the courts' reasoning in cases interpreting the nearly identical issue of whether yield spread premiums apply to the 1 % cap imposed on FHA loans. In these cases, the courts consistently concluded that the 1 % cap did not apply because, once again, the lender, and not the borrower, was (directly) making the payments. In interpreting the HUD regulation, which states that "[t]he mortgagee may collect from the mortgagor for expenses incurred in originating and closing the loan, the charge not to exceed: (i) 20 dollars or one percent of the original principal amount of the mortgage," 24 C.F.R. § 203.27(a)(2)(i), the court in *Bjustrom* found that "[t]he assertion that all borrowers ultimately pay for the yield service and service release premiums through higher interests rates is too strained a reading of 'collect' to compel inclusion of such indirect payments." *Bjustrom*, 178 F. Supp. 2d at 1190. *See also, Krzalic*, 2002 WL 924619, at *2 ("The regulation imposing the 1 % cap on origination fees is

8

limited by its plain language to fees to be paid by and collected from the borrower, and the Secretary has made clear that yield spread premiums do not fit in that box."); *Watson*, 2002 WL 598521, at *5 (By its [24 C.F.R. § 203.27(a)(2)(i)] plain language, it does not apply to [yield spread premiums] that are paid by the lender, not the borrower."); *Vargas*, 2001 WL 1545874, at *3 ("The directive [24 C.F.R. § 203.27(a)(2)(i)] puts an upper limit on 'origination fees' which are paid by the borrower to the broker, it says nothing about [yield spread premiums] which are paid by the lender.").

Because the court concludes that yield spread premiums do not apply toward the 1 % cap placed on veterans' fees under VA regulations, Count V must be dismissed. In addition, the claim in Count VI, that the yield spread premium payment over the 1 % cap violated the Illinois Consumer Fraud Act, and the claim in Count VII for breach of contract, must also be dismissed as they depend on plaintiffs prevailing on Count V.

## CONCLUSION

For the reasons stated above, the court grants WestAmerica's motion for judgment on the pleadings [#26] and Capital's motion for judgment on the pleadings [#29] as to Counts V, VI, and VII.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: Sept. 24, 2002

9